| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 0:09-CR-20-DLB-REW |
| | ) | No. 0:09-CV-7250-DLB |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| ROBERT D. PARKER, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On March 8, 2013,[1] Defendant, Robert D. Parker, filed a *pro se*[2] motion under 28

U.S.C. § 2255. DE #85 (Motion). The United States responded in opposition, DE #90

(Response), and Parker subsequently replied. DE #92 (Reply). Per normal practice, the

District assigned the matter to the undersigned for a recommended disposition.

The Court **RECOMMENDS** that the District Court fully **DENY** § 2255 relief[3]

and issue **no** Certificate of Appealability.

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (per curiam). Here, Parker affirmed under penalty of perjury that he executed and mailed the motion on March 8, 2013. DE #85 (Motion) at 41.

[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief") (citation omitted).

[3] Granting the motion, in effect, would deny **both** pending § 2255 motions. DE ##75, 85 (Motions). Parker first submitted a § 2255 motion on December 4, 2012, but the Court, during its initial review, had concerns about timeliness. DE ##76 (Order). The Court ordered briefing and ultimately found the motion timely but raised additional concerns regarding form. DE #82 (Order). The Court thus permitted Parker an opportunity to resubmit the motion. *Id.* Parker timely submitted the second § 2255 motion. Although the only operative motion for purposes of substantive review is the March 8, 2013

# I.    Background Information

A federal grand jury indicted Defendant on June 4, 2009 on multiple counts, including various allegations of crack cocaine and oxycodone trafficking, as well as illegal firearm possession.  DE #7 (Indictment).  On September 14, 2009, District Judge Bunning rearraigned Parker on Count 7 of the Indictment, which charged aggravated (+/=50 grams) distribution of crack.  DE #20 (Minute Entry).

By pleading to Count 7, Defendant faced enhanced statutory punishment, here mandatory life imprisonment, pursuant to 21 U.S.C. § 851 and notice of two prior felony drug offenses.  DE #17 (Notice); DE #50 (Plea Agreement).  The Court also treated Parker as a Career Offender pursuant to United States Sentencing Guidelines § 4B1.1, with a resulting Guidelines range of 262-327 months.  Ultimately, the United States moved for relief from the statutory minimum pursuant to § 5K1.1 and 18 U.S.C. § 3553(e).  DE #54 (Sent. Tr.) at 8-9; DE #70 (Order).  District Judge Bunning ultimately sentenced Parker to 150 months of imprisonment and 6 years of supervised release on June 14, 2010.  DE #51 (Judgment).

Defendant timely appealed to the Sixth Circuit.  On appeal, Parker attacked the Career Offender designation, specifically arguing that a prior conviction for complicity to aggravated burglary, relied on to meet the designation's predicate, was not a "crime of violence" for Career Offender purposes.  The Sixth Circuit affirmed Judge Bunning on plain error review and wholly denied relief.  DE #70 (Order).

---

motion, the Court formally addresses and recommends by this decision termination of both nominal §2255 motions (DE ##75, 85).

Parker filed the instant motion under § 2255 on March 8, 2013.  DE #85 (Motion).

The United States responded in opposition, relying principally on a waiver.[4]  DE #90

(Response).  Parker replied.  DE #92 (Reply).  The motion stands ripe and ready for

review.

## II.     Standard of Review and Case Overview

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if a

sentence violates the Constitution or federal law, the federal court lacked jurisdiction to

impose such sentence, or the sentence exceeds the maximum authorized by law. 28

U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In

order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1)

an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits;

or (3) an error of fact or law that was so fundamental as to render the entire proceeding

invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))).  A

defendant alleging a constitutional violation must establish "an error of constitutional

magnitude" and show that the error had a "substantial and injurious effect or influence on

the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486,

488 (6th Cir. 1999). When alleging a non-constitutional error, a defendant must prove the

error constituted a "'fundamental defect which inherently results in a complete

miscarriage of justice,' or, an error so egregious that it amounts to a violation of due

process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v.

United States*, 82 S. Ct. 468, 471 (1962)); *see also Watson*, 165 F.3d at 488.  In making a

§ 2255 motion, a movant generally bears the burden of proving factual assertions by a

---

[4] The brief's focus on waiver was unhelpful, in many respects, because Parker excepted
from the waiver sentencing-related arguments and claims.

preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

Parker's § 2255 motion is a lengthy and repetitive amalgam of allegations. The Court has reviewed the full motion and the complete record in an effort to understand and fairly assess the theories. Cutting through the voluminous briefing, the case really boils down to Parker's complaints about application of the Career Offender enhancement at sentencing. His assertions center on this element. DE #85 (Motion) at 30 ("[Parker] only wants the right sentence he would have had without the career offender enhancement.").

The parties had agreed, in the Plea Agreement, that Parker would be a Career Offender by virtue of his drug conviction record, which included two prior Ohio felonies. *See* DE #50 (Plea Agreement) at 2, ¶ 4. Judge Bunning questioned this analysis at rearraignment because the offenses seemed to be for possession rather than trafficking, a distinction that matters under U.S.S.G. § 4B1.1 and the controlled substance offense definition. *See* DE #65 (Rearr. Tr.) at 14-20; U.S.S.G. § 4B1.2 ("The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."). Though the Presentence Investigation Report (PIR) did originally assess Career Offender status based on those prior drug offenses, the defense objected and the USPO reassessed the matter. Per

analysis of Parker's extensive record, the USPO withdrew reliance on the two drug felonies but found that Parker was a Career Offender anyway, because he had two previous "crimes of violence," an alternate basis under § 4B1.1.  *See* DE #56 (PIR) at 14-17 ( USPO response to objections).

Defense counsel agreed with this USPO final analysis and declined further objection.  The Court thus nominally treated Parker as a Career Offender and adopted the PIR.  *See* DE #54 (Sent. Tr.) at 8.  Though Parker bemoans this finding now, the Career Offender issue clearly was not the sentencing driver.  Parker pled guilty to an aggravated crack cocaine trafficking violation, under 21 U.S.C. § 841(b)(1)(A).  Because Parker had the two prior drug felonies cited in a valid § 851 notice, the conviction required a mandatory life sentence.  The Plea Agreement and Rule 11 colloquy covered this exhaustively and in detail.  *See* DE #50 (Plea Agreement) ¶ 4; DE #65 (Rearr. Tr.) at 14-20.  Thus, sentencing centered not on whether Parker was a Career Offender but instead on the Government's motion under 18 U.S.C.§ 3553(e) and U.S.S.G. § 5K1.1.  The United States made the motion and substantiated it to the Court.

Judge Bunning obviously wrestled with the result.  For a Defendant facing a life term, but demonstrating substantial assistance, the United States recommended 180 months.  The defense advocated for 120 months.  Judge Bunning settled at 150 months—12.5 years instead of the life sentence called for under the conviction and mandatory minimum.

The stated defense strategy, from counsel, Mike Murphy, was to plead guilty and work diligently toward the § 3553(e) motion.  The defense faced a case supported by taped crack deals involving Parker, and Parker's record required the mandatory life term

in the event of a conviction with no § 3553(e) option.  The strategy surely worked, based on the ultimate sentence; yet, Parker still feels aggrieved.

Movant now weakly claims that Murphy misled or mistreated him, resulting in a plea. The central claim, though, is that Murphy was ineffective by allowing the alternative Career Offender theory—one based on prior crimes of violence—to apply. Parker asserts that he had inadequate notice of the analysis, that Murphy was unprepared and insufficiently aggressive, and that the underlying Guidelines application was flawed.

 The motion fails for several reasons.  First, Parker did enter a valid collateral attack waiver and a valid plea, which forecloses some of the arguments he presents. Second, to the extent Parker seeks to challenge the propriety of the Career Offender application, substantively or procedurally, his prior appeal already resolved the claim and/or the claim is defaulted and baseless.   Finally, Parker's *Strickland* claims here are meritless.  The record refutes most of the criticisms.  Further, and as a critical point to all of Parker's arguments, the Career Offender designation was purely academic, given the application of the Guidelines in this case and the primacy of the statutorily mandated life term.  Parker does not present any valid basis for relief in this case.

## III.    Analysis

A. Waiver of Appeal and Collateral Attack Right

To the extent Parker attempts to challenge anything other than his sentence, a valid waiver precludes relief.  Though his claims are repetitive and hard to organize cleanly, there are arguments suggestive of other theories, which the waiver and record foreclose.

The United States argues that the claims raised in Parker's § 2255 motion generally are not reviewable because he knowingly and voluntarily entered into a plea agreement waiving the right to appeal and collaterally attack the guilty plea and conviction. DE #90 (Response) at 2-7. Defendant's plea agreement states, "The Defendant waives the right to appeal and the right to attack collaterally the guilty plea and conviction, including any order of restitution." DE #50 (Plea Agreement) at 3, ¶ 8. He thus preserved the right to challenge his sentence, and indeed Parker appealed his sentence to the Sixth Circuit. He did not waive a collateral attack of his sentence but did waive collateral attack on his plea and conviction.

In the Sixth Circuit, an "informed and voluntary" collateral-attack waiver is enforceable. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *Watson*, 165 F.3d at 489; *see also United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (explaining that a defendant in a criminal case may waive any right via a plea agreement, including constitutional rights). Challenges to waiver and foundational plea validity remain appropriate, but a knowing and voluntary waiver otherwise is enforceable. *United States v. Toth*, 668 F.3d 374, 378-79 (6th Cir. 2012).

Here, Parker acknowledged by executing the plea agreement that he had reviewed the full document with counsel and understood its terms. DE #50 (Plea Agreement) at 4, ¶ 13. At rearraignment, Movant confirmed to the District Judge, under oath, that he had reviewed the plea agreement with counsel. DE #65 (Rearr. Tr.) at 8. Defendant further affirmed that he entered into the plea voluntarily. *Id.* at 9. He promised that he both fully understood and agreed with the agreement's terms. *Id.* at 12 ("I understand it fully."). Additionally, the District Judge personally addressed Movant and specifically discussed

the appeal and collateral-attack waiver. *Id.* at 23-24 ("You can't come back six, nine months after your sentence and after being in a law library with some inmates who say you should file this 2255 because you should have raised X, Y, and Z in your sentence. Absent exceptional circumstances, you're not going to be able to challenge your conviction later by filing a separate lawsuit. Do you understand that?"). Parker affirmatively responded that he understood the provision. *Id.*

The District Judge also addressed the potential for Parker to be characterized as a Career Offender:

> You are, in your plea agreement, indicating that because of your two prior convictions, that you are what is called a career offender under the sentencing guidelines, and I'm looking at particularly paragraph 6 of your plea agreement. You acknowledge that you have two prior felony drug convictions and are therefore subject to the enhanced statutory penalty set forth in paragraph 4 as well as a career offender.

*Id.* at 14; *id.* at 14-15 (noting that the plea agreement designates Defendant as a Career Offender). Parker acknowledged that he understood the pre-sentence investigation process. *Id.* at 17. Further, he confirmed that he understood that the investigation could reveal that he actually was not a Career Offender—that is, that the USPO and the Court would make an analysis and decision independent of the parties' agreement. *Id.* at 19.

Additionally, Parker confirmed to the Court that he and his lawyer had sufficiently discussed the option of going to trial or pleading guilty. *Id.* at 65. Finally, Parker expressed his satisfaction with the advice, counsel, and representation of Murphy. *Id.*

The record shows that Parker's responses were voluntary and verified, and Judge Bunning determined at the hearing that Parker was competent. *Id.* at 4-5, 9, 29-30. Solemn declarations in open court "carry a strong presumption of verity" and "constitute

a formidable barrier" in subsequent collateral proceedings. *Blackledge v. Allison*, 97 S. Ct. 1621, 1629 (1977). Considering the representations that Defendant made in the plea agreement and during rearraignment, and the significance of his sworn statements, the Court can only conclude that Parker made an "informed and voluntary" waiver. *In re Acosta*, 480 F.3d at 422.

Parker does not attack the waiver itself. His attack on the plea, such as it is, really goes to what Murphy allegedly conveyed to him in advance of the decision to plead. Parker repeatedly asserts that Murphy promised him that "he would not be given a career offender enhancement or 851 if he plead guilty." *See* DE #85 (Motion) at 26. He also claims that Murphy was rude or insulting, calling him "stupid a number of times on sentencing day because he wanted to go over plea with his family[.]" *Id.* at 30. The Court rejects these fanciful theories as foreclosed by the record. The United States filed its § 851 notice ten days in advance of Defendant's rearraignment motion. *See* DE ##17 (§ 851 Notice filed on 8/31/09), 18 (Motion for rearraignment filed on 9/9/09). The Plea Agreement expressly references the § 851 notice, and Judge Bunning covered the details clearly in the plea colloquy. DE #50 (Plea Agreement) ¶ 4 (acknowledging two prior drug felonies and § 851 notice); DE #65 (Rearr. Tr.) at 7, 11. Not only would a plea not avert the § 851 notice, the plea centered on and included the notice as well as a concession of Career Offender status. Further, the allegations of rudeness by Murphy merge events from two distinct case stages (rearraignment and sentencing) in a way that is plainly not credible. Under oath, at the plea, Parker verified his full satisfaction with Murphy's work and representation. The sworn record refutes Parker's theories here, and the operative waiver thus resolves any arguments concerning conviction validity.

In sum, the Court finds the waiver effective as far as it goes.[5] Parker cannot challenge his plea or conviction and the few remarks he directs toward plea validity are flatly inconsistent with the record. However, the waiver does not impact sentencing claims cognizable under § 2255. Parker includes some such claims, which the Court addresses on their merits.

B. Claims of sentencing error are defaulted, previously adjudicated, and/or baseless.

Parker makes non-specific complaints about adequate notice and the procedural propriety of his sentence, relative to Career Offender treatment. While citing generically notions of due process, Parker does not claim that his lawyer did not have notice or that the Court proceeded in an unfair manner. As such, his claim really is one for ineffective assistance of counsel—that if Murphy had handled the matter appropriately, the sentence would have been different. The Court addresses that theory more fully in the next section.

As to any other claims directed at the sentencing process or the Court's substantive sentencing result, none of those claims properly applies in this context.[6] A few principles: First, Parker cannot substitute a § 2255 motion for a direct appeal. Thus, arguments he could have but did not make on direct appeal generally are off limits here,

_____

[5] *Acosta*, of course, places logical limits on enforcement. If a waiver or guilty plea results from ineffective assistance or is unknowing/involuntary, *Acosta* would not enforce. *In re Acosta*, 480 F.3d at 422 n.1. Here, Parker does not mention, let alone impugn, the waiver itself, and the ineffective assistance arguments Movant raises do not preclude enforcement. Defendant does not contend that he failed to understand the waiver, and he does not criticize counsel for negotiating the waiver. His arguments, focused on sentencing, also do not credibly implicate plea validity.

[6] Parker drops in references to other undeveloped theories—such as, that the 350 gram quantity used by the USPO was improper or that the other targeted "crime of violence" was too old. *See* DE #85 (Motion) at 27. The quantity came directly from the plea agreement, *see* DE #50 (Plea Agreement) at 2, ¶ 3. The Sixth Circuit likewise dealt with the age of the first conviction, finding the timing issue groundless. *See* DE #70 (Order) at 2-3. Parker makes only non-specific complaints about that conviction here.

absent justification under the cause and prejudice rubric.  *See United States v. Boutte*, No. 13-40575, 2013 WL 5754147, at *1 (5th Cir. Oct. 24, 2013) ("Further, Boutte's challenge to the calculation of his sentence under the Guidelines could not be considered in a 28 U.S.C. § 2255 motion as it asserts a nonconstitutional error that could have been raised on direct appeal." (citation omitted)); *Clark v. United States*, Nos. 4:02-CR-17, 4:10-CV-39, 2012 WL 3991066,  at *13 (E.D. Tenn. Sept. 11, 2012) (discussing Career Offender designation and stating, "Claims of sentencing error based on alleged mistakes in the application of the Sentencing Guidelines rarely, if ever, warrant post-conviction relief from the consequences of the waiver under § 2255." (citation omitted)).  Further, to the extent an appeal did resolve an issue, Parker may not seek to re-litigate that determination via § 2255.  *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) ("It is equally well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." (citations omitted)).  Finally, not all sentencing error properly falls within § 2255.  The statute addresses claims of fundamental import, and non-constitutional sentencing errors must be ones of weight connoting a miscarriage of justice or egregious mistake equivalent to a due process denial.  Parker finally must articulate a claim with sufficient clarity to permit assessment of the merits.  *Munguia v. United States*, Nos. 1:04-CR-122, 1:09-CV-170, 2013 WL 5306192, at **1-2 (E.D. Tenn. Sept. 20, 2013) ("Vague, conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant an evidentiary hearing. A § 2255 motion may be dismissed if it merely makes conclusory statements

without substantiating allegations of specific facts and thereby fails to state a claim under § 2255." (citations omitted)).

Parker asserts that Judge Bunning improperly classified him as a Career Offender. His complaint is that the prior "crimes of violence," in particular the complicity to aggravated burglary, should not have counted as predicates under U.S.S.G. § 4B1.1. Parker, relying heavily on specifics of the crime, claims that, with adequate notice, he could have disproven predicate qualification.

The Sixth Circuit reviewed the Career Offender designation for plain error (because counsel had not objected). DE #70 (Order) at 2. Recognizing that "aggravated burglary," treated as "burglary of a dwelling," expressly is a crime of violence under the definition, *see* § 4B1.2(a)(2), and recognizing that the theories of aiding and abetting or conspiring to commit a crime of violence are also crimes of violence, *see id.* application note 1, the Circuit Court affirmed the District Court. The decision treats complicity to aggravated burglary as a crime of violence under the relevant section. The Circuit thus found "that the district court did not plainly err in considering Parker's prior conviction of complicity to aggravated burglary a predicate offense on which his career offender enhancement could be based." DE #70 (Order) at 2.

Thus, the appeal resolved the propriety of counting the Ohio conviction. That largely forecloses re-challenge, which in any event would fail. Substantively, the decision undoubtedly was correct. The Court notes that, in 1983, the aggravated burglary statute in Ohio applied to trespass of an "occupied structure" with certain additional elements, such as infliction of physical harm, possession of a deadly weapon, or actual/likely presence of a victim. Ohio Rev. Code Ann. § 2911.11 (pre-1995

amendment version). For the 1973 enactment, the Ohio Legislative Research Commission described the complicity statute, enacted at Ohio Rev. Code Ann. § 2923.03 and in effect in 1983, as one that "in essence . . . codifies existing case law with respect to 'aiding and abetting.' . . . Accomplices are liable to prosecution and punishment as principal offenders." This squares directly with analysis, adopted by the Sixth Circuit in Parker's appeal, treating aggravated burglary in Ohio as burglary of a dwelling and treating complicity as within the extended liability theories of § 4B1.2's application note 1.

Parker here alleges the same argument he presented then, mainly that the factual circumstances of the underlying conviction should have been investigated. Per Defendant, the results of the investigation would have disqualified the complicity to aggravated burglary conviction from serving as a predicate to Career Offender status. The gravamen of Parker's argument is that his complicity conduct was not violent and did not present "a serious risk potential risk of physical injury to another." DE #85 (Motion) at 22-23. Per Movant, then, the enhancement could not apply without further scrutiny.

Under the 2009 Guidelines, a defendant is a Career Offender if (1) the defendant was 18 at the time of the instant offense of conviction; (2) the instant offense is either a felony crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a) (2009 ed.). The Guidelines define a crime of violence as any felony offense under federal or state law that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is

burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 4B1.2(a). Included within the definition of a crime of violence is aiding and betting, conspiring, and attempting to commit such offenses. *United States v. Bartee*, 529 F.3d 357 (6th Cir. 2008); *see also* § 4B1.2, application note 1.

Courts use a "categorical approach" to determine whether a conviction qualifies as a crime of violence, looking "'only to the fact of conviction and statutory definition – not the facts underlying the offense—to determine whether that definition supports a conclusion that the conviction was for a crime of violence.'" *United States v. Ruvalcaba*, 627 F.3d 218, 221 (6th Cir. 2010) (quoting *Bartee*, 627 F.3d at 359). Accordingly, courts consider the offense "'generically, that is to say, . . . examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'" *Id.* (quoting *Begay v. United States*, 128 S. Ct. 1581, 1584 (2008)).[7]

Parker argues that, in the prior case, he committed the crime without violence. Under the required categorical approach, however, the specific factual circumstances of the conviction are irrelevant. *James v. United States*, 127 S. Ct. 1586, 1597 (2007) ("[T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another."). Thus, to the extent Parker committed a crime non-violently, such details matter not. Additionally, the Supreme Court has upheld attempted burglary as a crime of violence,

---

[7] In the Sixth Circuit, courts construe a "crime of violence" for Career Offender purposes identically to a "violent felony" under the Armed Career Criminal Act. *See United States v. Johnson*, 707 F.3d 655, 659 n.2 (6th Cir. 2013). Accordingly, in analyzing whether a particular offense qualifies as a "crime of violence," courts may rely upon ACCA cases. *See United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013).

although the crime can, in particular scenarios, be committed in a manner that does not pose serious risk of physical injury. *James*, 127 S. Ct. at 1597; *see also* DE #70 (Order).

Parker's appeal resolved the issue and resolved the issue correctly. He does not allege any specific other constitutional claim, outside of ineffective assistance of counsel, requiring further scrutiny.

## C. Ineffective Assistance of Counsel

When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. As to sentencing prejudice,

there must be a "reasonable probability that, but for the errors of counsel, his sentence would have been different." *United States v. Geedi*, 490 Fed. App'x 755, 761 (6th Cir. 2012) (citing *Strickland*).

Here, capturing each variant of criticism Parker directs toward Murphy is no easy task. The complaints include, as earlier discussed, misadvice, untoward pressure, and rudeness. Murphy's alleged lack of zealousness evinced an alleged (though unspecified) conflict of interest. More directly regarding the key sentencing aspects, Murphy purportedly did not convey Guidelines operation, did not object to the Career Offender calculus, did not disclose information about the crimes of violence theory in a timely way, botched sentencing, and generally failed as an advocate. The Court already rejected claims predating sentencing as flatly refuted by the record.

The sentencing claims also fail both *Strickland* prongs. From the point of rearraignment, Murphy knew (and the record shows Parker knew) that Parker faced mandatory life imprisonment, with a vigorous substantial assistance motion the only real avenue for relief. DE #65 (Rearr. Tr.) at 3. Murphy conveyed at the rearraignment that Parker faced well-supported charges, *id.* at 6-7, and the United States already had filed the § 851 notice. Judge Bunning covered all of this during the plea colloquy.

Murphy was perhaps indifferent on the Career Offender designation for obvious reasons. *Id.* at 15 ("I'm not sure if any of that [career offender application] really matters . . . because the statutory penalty . . . is going to override any career offender."). The designation took Parker from an offense level 32 (based on drug quantity) to a 37 (based on Career Offender status). *See* PIR at 5. ¶¶ 12, 17-18. With or without Career Offender status, Parker was a criminal history category VI. *See* DE #54 (Sent. Tr.) at 8.

While the numbers moved the theoretical range significantly, the statutory limits in the case trumped every other calculation, not just practically but as the effective Guidelines range.

Thus, the Count 7 mandatory minimum sentence, under § 841(b)(1)(A) with notice of two prior felonies, was life imprisonment. Irrespective of the Guidelines result otherwise, the mandatory minimum sentence controlled. The statutory requisite, "like other sentencing statutes, . . . trumps the Guidelines." *Dorsey v. United States*, 132 S. Ct. 2321, 2327 (2012); *see also United States v. Moody*, 526 Fed. App'x 576, 580 (6th Cir. 2013) ("A mandatory minimum sentence is most assuredly not advisory, even if the guideline provision directing the court to apply it is." (citing *Dorsey*)). The Guidelines expressly account for the effect of such mandatory minima. Thus, in § 5G1.1, the Guidelines provide:

> (b) Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, *the statutorily required minimum sentence shall be the guideline sentence*.

U.S.S.G. § 5G1.1(b) (emphasis added); *see also United States v. Hudacek*, 24 F.3d 143, 146 (11th Cir. 1994) (rejecting need to calculate range as Career Offender where statutory life sentence applied: "The life sentence was, therefore [per § 5G1.1(b)] correct under both the statute and the guidelines."). That was Parker's situation; the Guidelines range, with or without the Career Offender enhancement, fell below the statutory minimum, and the minimum thus became **the Guidelines sentence**.

Parker's range resulted from the life sentence, and the life sentence became the applicable range. When the United States made its § 3553(e) motion, that statute required then a sentence "imposed in accordance with the guidelines[.]" In turn,

U.S.S.G. § 5K1.1 enumerates the factors, related to assistance, to govern the ultimate sentence relative to Guidelines consideration.

Judge Bunning did express interest in and relevance of the Guidelines: "I do look at the sentencing guidelines in trying to fashion an appropriate sentence so the guidelines do become relevant if, in fact, there's a motion made." DE #65 (Rearr. Tr.) at 15. However, that discussion was largely academic in this case because the correct range, and the range from which Judge Bunning departed, resulted from the life sentence and not from the Career Offender application. Judge Bunning simply wanted a full understanding of theoretical application, but whether Parker was a Career Offender had no impact on the correctly calculated range. This is so because the statute mandated life and, thus, life "became his 'applicable guideline range' by operation of law[.]" *Moody*, 526 Fed. App'x at 580 (quoting *Dorsey*). The escape from that requirement routed through § 3553(e) and the limits imposed by that statue. *United States v. Williams*, 637 F.3d 283, 286 (6th Cir. 2012) ("We, along with our sister circuits, have consistently held that 'only factors relating to a defendant's cooperation may influence the *extent* of a departure pursuant to § 3553(e).'" (quoting *United States v. Bullard,* 390 F.3d 413, 416 (6th Cir.2004) (collecting cases )); *id.* ("Accordingly, we have 'repeatedly rejected the notion that factors not related to cooperation may be considered in connection with a § 3553(e) motion.'" (quoting *United States v. Hawn,* 446 Fed. App'x 793, 796 (6th Cir. 2012)).

Parker's sentencing criticisms of Murphy thus are groundless under *Strickland*. Murphy ultimately agreed with the USPO on the Career Offender alternative "crime of violence" basis. Both Judge Bunning and the Sixth Circuit treated the complicity crime

as a qualifying predicate. The merits show that Murphy had no legitimate theory for contesting the crime of violence application, and *Strickland* does not require counsel to make meritless arguments. *Bailey v. Smith*, 492 Fed. App'x 619, 627 (6th Cir. 2012) ("*Strickland* does not require counsel to make meritless requests." (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1426 (2011))); *Ryal v. Lafler*, 508 Fed. App'x 516, 520 (6th Cir. 2012) ("And Ryal's attorney 'was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel.'" (quoting *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998))).

Further, as noted, with or without the enhancement, the sentencing results most certainly would have been the same. The sentence flowed through the dynamic of the mandatory life term, the § 5K/§ 3553(e) motion, and the details and quality of assistance demonstrated. The Career Offender application was an academic exercise, not a technical element of sentencing governance, in a case where § 841's mandatory minimum decided the sentence and dictated the Guidelines range. Parker fails to show prejudice or deficiency under *Strickland*.

## IV.     Certificate of Appealability

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3);

*Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604.

Defendant has not made a "substantial showing" as to any claimed denial of rights; his *Strickland* claim conclusively fails. Parker defaulted his due process claims, to the extent the motion asserts them. Further, the Court accurately applied the Career Offender enhancement. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

## V. Recommendation

For the reasons discussed above, the Court **RECOMMENDS** that the District Judge wholly **DENY** § 2255 relief (DE ##75, 85) and grant **no** Certificate of Appealability.

*   *   *   *   *

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a

timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 8th day of January, 2014.

Signed By:

Robert E. Wier

United States Magistrate Judge